**GREENSPOON MARDER LLP**
Kelly M. Purcaro, Esq.
Kory Ann Ferro, Esq.
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Tel.: (732) 456-8734 or 8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com
*Attorneys for Defendant Joy Rockwell Enterprises, Inc.*
*d/b/a PostcardMania PCM LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>*Plaintiff,*<br><br>v.<br><br>JOY ROCKWELL ENTERPRISES, INC. d/b/a  POSTCARDMANIA PCM LLC, RICHARD ROES 1-10, fictitious names of unknown individuals, and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>*Defendants.* | Case No.: 3:24-cv-04389<br><br>Civil Action<br><br>**AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL** |

Defendant Joy Rockwell Enterprises, Inc. d/b/a PostcardMania PCM LLC ("PCM"), by and through its undersigned counsel, hereby timely responds to the Complaint filed by Plaintiffs, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Jane Doe-1, *a law enforcement officer*, Jane Doe-2, *a law enforcement officer*, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan ("Plaintiffs"). The headings and Paragraph numbers below correspond to the Paragraphs contained in the Complaint.

## INTRODUCTION

1.      PCM denies that it is one of the alleged "uncooperative profit-seeking data brokers" as described in Paragraph 1 of the Complaint. PCM is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1 of the Complaint and accordingly denies the allegations.

2.      PCM denies that it is one of the alleged companies "without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles" as described in Paragraph 2 of the Complaint. PCM is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2 of the Complaint and accordingly denies the allegations.

3.      PCM denies that it is a "data broker" or that it "wantonly and repeatedly disregard[s] the law" or "demonstrate[s] a callousness towards the well-being of those who serve" as described in Paragraph 3 of the Complaint.  PCM is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint and accordingly denies the allegations.

4.      PCM admits that Plaintiffs filed this action. PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint and accordingly denies the allegations.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.      PCM admits the allegations contained in Paragraph 5 of the Complaint.

6.      PCM admits the allegations contained in Paragraph 6 of the Complaint.

7.      PCM denies that it is a "data broker" as described in Paragraph 7 of the Complaint.

### New Jersey Passes Daniel's Law in 2020

8.      PCM admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.*
and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence
of its contents.  PCM is without knowledge or information sufficient to form a
belief as to the truth of the remaining allegations contained in Paragraph 8 of the
Complaint and denies same to the extent they incorrectly state a conclusion of law.

9.      PCM admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.*
and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence
of its contents.  PCM is without knowledge or information sufficient to form a
belief as to the truth of the remaining allegations contained in Paragraph 9 of the
Complaint and denies same to the extent they incorrectly state a conclusion of law.

### Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022

10.     PCM is without knowledge or information sufficient to form a belief
as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.     PCM is without knowledge or information sufficient to form a belief
as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.     PCM is without knowledge or information sufficient to form a belief
as to the truth of the allegations contained in Paragraph 12 of the Complaint.

**Violence Against Police Officers and Judges Has Not Stopped**

13.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

## THE PARTIES

**The Individual Plaintiffs**

15.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and accordingly leaves Plaintiffs to their proofs.

16.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and accordingly leaves Plaintiffs to their proofs.

17.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and accordingly leaves Plaintiffs to their proofs.

18.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and accordingly leaves Plaintiffs to their proofs.

19.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and accordingly leaves Plaintiffs to their proofs.

20.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and accordingly leaves Plaintiffs to their proofs.

21.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and accordingly leaves Plaintiffs to their proofs.

22.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint and accordingly leaves Plaintiffs to their proofs.

23.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint and accordingly leaves Plaintiffs to their proofs.

24.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint and accordingly leaves Plaintiffs to their proofs.

**Plaintiff Atlas and its Assignors**

25.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint and accordingly leaves Plaintiffs to their proofs.

26.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint and accordingly denies the allegations.

27.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint and accordingly denies the allegations.

28.    PCM denies receipt of some or all of the "written notice(s)" described in Paragraph 28 of the Complaint. PCM is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28 of the Complaint and accordingly denies the allegations.

29.    PCM denies the allegations contained in Paragraph 29 of the Complaint.

30.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint and accordingly denies the allegations.

31.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint and accordingly denies the allegations.

32.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint and accordingly denies the allegations.

33.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and accordingly denies the allegations.

34.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint and accordingly denies the allegations.

35.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint and accordingly denies the allegations.

36.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and accordingly denies the allegations.

**Defendants**

37.    PCM denies the allegations contained in Paragraph 37 of the Complaint.

38.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint as it references unidentified "Richard Roe" individuals and "ABC Companies." To the extent Paragraph 38 contends that employees of PCM were engaged in any wrongdoing, PCM denies same.

39.    PCM engages in business-to-business direct mail and digital marketing primarily through the design and mailing of postcards. PCM does so, in part, through postcardmania.com. PCM denies the remaining allegations contained in Paragraph 39 of the Complaint and accordingly leaves Plaintiffs to their proofs.

40.    PCM denies the allegations contained in Paragraph 40 of the Complaint.

41.    PCM denies that the characterizations of services alleged in Paragraph 41 of this Complaint apply to PCM and further denies that PCM "disclose[s]" information "without sufficient regard to the risks and consequences imposed on individuals."

## JURISDICTION AND VENUE

42.     Paragraph 42 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, PCM denies that state court, where the Complaint was filed had jurisdiction, which is why the matter was properly removed to federal court.

43.     Paragraph 43 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, PCM denies the allegations in Paragraph 43 of the Complaint as venue in Monmouth County was not proper resulting in the removal of this matter from state court to federal court.

## FACTS COMMON TO ALL COUNTS

44.     Paragraph 44 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, PCM admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1.

45.     Paragraph 45 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, PCM denies the allegations contained in Paragraph 45 of the Complaint to the extent they incorrectly state a conclusion of law.

46.     Paragraph 46 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, PCM denies the allegations contained in Paragraph 46 of the Complaint to the extent they incorrectly state a conclusion of law.

47.     Paragraph 47 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, PCM denies the allegations contained in Paragraph 47 of the Complaint to the extent they incorrectly state a conclusion of law.

48.     Paragraph 48 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, PCM denies the allegations contained in Paragraph 48 of the Complaint to the extent they incorrectly state a conclusion of law

49.     Paragraph 49 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, PCM denies the allegations contained in Paragraph 49 of the Complaint to the extent they incorrectly state a conclusion of law

50.     Paragraph 50 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, PCM denies the allegations contained in Paragraph 50 of the Complaint to the extent they incorrectly state a conclusion of law.

51.    PCM denies the allegations contained in Paragraph 51 of the Complaint.

52.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 of the Complaint and accordingly denies the allegations.

53.    PCM denies the allegations contained in Paragraph 53 of the Complaint.

54.    PCM denies the allegations contained in Paragraph 54 of the Complaint.

55.    PCM is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of the Complaint and accordingly denies the allegations.

56.    PCM denies the allegations contained in Paragraph 56 of the Complaint.

## COUNT ONE
### (Daniel's Law)

57.    PCM repeats, realleges, and incorporates by reference each of the preceding paragraphs of this Answer as if fully set forth herein.

58.    PCM denies the allegations contained in Paragraph 58 of the Complaint.

59.    Paragraph 59 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, PCM denies the allegations contained in Paragraph 59 of the Complaint to the extent they incorrectly state a conclusion of law.

60.    PCM denies the allegations contained in Paragraph 60 of the Complaint.

61.    PCM denies the allegations contained in Paragraph 61 of the Complaint.

62.    PCM denies the allegations contained in Paragraph 62 of the Complaint.

63.    PCM denies the allegations contained in Paragraph 63 of the Complaint.

**WHEREFORE**, PCM demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding PCM attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

As to any part of the Complaint not specifically admitted, denied, or discussed with respect to PCM, PCM hereby denies said allegations, including, but not limited to, any allegations contained in the Complaint's preamble, headings, subheadings, and wherefore clauses.  Furthermore, any averments in the Complaint to which no responsive pleadings are capable or required shall be deemed denied.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, PCM pleads the following affirmative defenses to Plaintiffs' Complaint:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable Statute of Limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs lack standing to bring this action as Plaintiffs have not suffered the requisite harm required to confer standing under Article III of the United States Constitution.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs' lack standing to bring the claims by way of assignment and/or as noncovered persons.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because any

alleged wrongdoing by PCM, which PCM denies, was caused by mistake. Indeed, PCM acted reasonably and in good faith at all material times based on all relevant facts and circumstances known by it at the time it acted.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the subject alleged speech constitute commercial speech protected by the First Amendment of the United States Constitution and the imposition of liability for such protected speech violates the First Amendment rights of the speaker.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs failed to mitigate their damages. While PCM does not concede that it has

violated Daniel's Law or that Plaintiffs sustained damages, recovery (if any) should be reduced in proportion to Plaintiffs' failure to mitigate such damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs seek impermissible liquidated damages.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged requests were sent for an improper purpose, and in an effort to manufacture and pursue litigation on a massive group action basis, not to seek compensation for damages suffered, as contemplated by statute.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unjust enrichment.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged damages Plaintiffs seek were caused in whole or in part by the acts or omissions or intervening and superseding acts of negligence or intentional conduct on the part of persons or entities over whom PCM has neither control nor right of control and for whose actions PCM is not liable.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the statutory damages provisions of the law are excessive fines and/or are grossly disproportionate to any actual harm that may have been suffered. Accordingly, such statutory damages provisions violate the United States Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the Communications Decency Act. *See* 47 U.S.C. § 230 *et seq.*

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited as violative of the United States Constitution as applied to PCM.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive relief fail or otherwise are barred, in whole or in part, or are limited because there is neither continuing harm nor immediate danger Plaintiffs as PCM is not does not compile data for resale and does not publish information to the general public; rather, PCM provides business-to-business services primarily through the design and sending of postcards.

## NINETEENTH AFFIRMATIVE DEFENSE

PCM did not owe a duty to Plaintiffs.

## TWENTIETH AFFIRMATIVE DEFENSE

PCM did not breach any legal duty owed to Plaintiffs.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

PCM was not the actual or proximate cause of the damages claimed by Plaintiffs.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims against PCM are barred by the doctrines of comparative and/or contributory negligence.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Public policy prohibits recovery by Plaintiffs against PCM.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' allegations are barred by the common law doctrine of impossibility of performance.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Atlas failed to provide full and complete information to their users regarding PCM and its services during the opt-out and/or assignment process resulting in improper opt-out requests based on misinformation and incomplete information and/or invalid assignments.

## TWENTY-SIXTH AFFIRMATIVE DEFENSES

Plaintiffs' claims for punitive damages fail or otherwise are barred, in whole or in part, or are limited because PCM did not engage in any acts or omissions actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.  In addition, the award of such damages would violate PCM's rights under the Constitutions of the State of New Jersey and the United States of America.

## RESERVATION OF RIGHTS

PCM reserves the right to amend or add to its affirmative defenses upon discovery of additional information or evidence or as justice so requires.

**WHEREFORE**, PCM demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding PCM attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

Defendant/Counterclaimant Joy Rockwell Enterprises, Inc. d/b/a PostcardMania PCM LLC ("PCM"), by and through its undersigned counsel, hereby complains by way of Counterclaim against Plaintiffs/Counterclaim-Defendants, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Jane Doe-1, *a law enforcement officer*, Jane Doe-2, *a law enforcement*

19

*officer*, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan ("Plaintiffs"), as follows:

## PARTIES

1.      Defendant/Counterclaimant PCM is a Florida business-to-business direct mail and digital marketing company, primarily providing services to businesses through the design and mailing of postcards.  PCM headquarters are located at 2145 Sunnydale Blvd, Clearwater, FL 33765. PCM provides services via interstate computer services and does not have any offices or locations within the State of New Jersey.

2.      Upon information and belief, Plaintiff Atlas Data Privacy Corporation ("Atlas") is a Delaware corporation organized under the laws of the State of Delaware with its offices located at 201 Montgomery Street, Suite 263, Jersey City, New Jersey.

3.      Upon information and belief, Jane Doe-1, *a law enforcement officer*, is or was a police officer working in Northern New Jersey.

4.      Upon information and belief, Jane Doe-2, *a law enforcement officer*, is or was a correctional police officer who lives in Northern New Jersey.

5.      Upon information and belief, Edwin Maldonado is or was a Detective with Plainfield, New Jersey's major crime unit and a Federal task force.

6.      Upon information and belief, Scott Maloney is or was a police officer

20

in the Rahway, New Jersey Police Department.

7.      Upon information and belief, Justyna Maloney is or was a police officer in the Rahway, New Jersey Police Department.

8.      Upon information and belief, Plaintiff Patrick Colligan is or was a police Detective for the police department of Franklin Township in Somerset, New Jersey.

9.      Upon information and belief, Plaintiff Peter Andreyev is or was a police officer for the police department of Point Pleasant in Ocean County, New Jersey.

10.     Upon information and belief, William Sullivan is or was a correctional police officer with the New Jersey Department of Corrections.

## JURISDICTION AND VENUE

11.     Jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as PCM is a citizen of a state different from Plaintiffs and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue is proper in this judicial district pursuant to the assignment of this case to this Court.

## FACTUAL BACKGROUND

13.     Atlas leveraged the amendments to Daniel's Law to improperly create a cottage industry for itself, whereby it designed a process upon which it could recruit "covered persons," sabotage hundreds of businesses, and profit off the legal

21

claims of those very "covered persons" at the expenses of unsuspecting companies.

14.     Atlas sought out and signed up thousands of alleged covered persons (the "Assignors"), asked that they assign their legal rights to Atlas, provided the Assignors with a preset list of target companies, and created "nondisclosure requests" on behalf of the Assignors.

15.     Atlas claims to provide services to "Remove Your Personal Data From the Web" and protect people by "removing your information from Google and data broker websites" as evidenced by Atlas's own website at https://www.atlas.net/:



16.     PCM does not publish data on the web, PCM does not have a data broker website which publishes or provides people search services. Yet, Atlas misrepresented its services by the inclusion of PCM on its target list, thereby allowing it to sign-up tens of thousands of Assignors to create nearly 50,000 invalid "nondisclosure requests" as part of its scheme.

17. The "nondisclosure requests" created by Atlas were generic, autogenerated emails completely devoid of individual information of the Assignors, which would be needed to, among other things, confirm that the tens of thousands of requests were *bona fide* requests, made on behalf of actual Covered Persons, or even authorized by the Assignors, or if the information provided was in fact "the home address or unpublished home telephone number" of any Covered Person (herein "Protected Information").

18. Indeed, the requests were created and sent by Atlas, and not by the Assignors as required by Daniel's Law.

19. Atlas collected Assignors for about six months until it reached nearly 20,000– all the while withholding such Assignors purported nondisclosure requests until Atlas acquired its critical mass needed to launch its attack.

20. To be sure, if Atlas were truly concerned about the safety of the Assignors, it would have generated opt-out requests immediately upon an Assignor signing up for services, not months later.

21. Atlas failed to verify that the Assignors qualified as Covered Persons under Daniel's Law.

22. Atlas failed to verify that the targeted defendants, including PCM, possessed or disclosed Protected Information of the Assignors.

23. Atlas failed to review or advise the Assignors of PCM's business, terms

of use, privacy practices, or any other material facts about PCM.

24.    Once Atlas reached its critical mass of plaintiffs, Atlas claims it sent tens of thousands of emails nearly simultaneously, all from "@atlasmail.com" to PCM's primary sales email address "info@postcardmania.com" rather than use PCM's already existing platform or its correct opt out email address.

25.    PCM has a preexisting opt out process, whereby opt out requests can easily processed through the available platform on PCM's website, either by individuals or single addresses or for multiple addresses through csv or xls file sent to privacy@postacrdmania.com, regardless of covered person status.[1]  Moreover, the appropriate email for these types of requests was privacy@postcardmania.com. As such, in launching its attack, PCM used the wrong email and ignored a pre-established opt out platform.

26.    Atlas sent this massive email attack with the intent and purpose of bombarding and damaging PCM's computer systems, server, and business with its spam attack.

27.    Based upon Atlas's own "lists" provided months into this litigation per this Court's Orders dated April 18, 2024 (Dkt. No. 11) and June 17, 2025 (Dkt. No. 56)(herein the "Lists"), Atlas sent its spam attack of tens of thousands of nearly identical emails from the same unknown handle to PCM sales inquiry email with the

---

[1] https://www.postcardmania.com/ccpa/

purpose and intention of frustrating the 10-day compliance period under Daniel's Law.

28.    The Lists show that Atlas, indeed, sent multiple separate emails on behalf of the same plaintiffs (e.g., one email for an address, one email for a phone number, one email for an alternate phone number) to generate an even higher volume of emails in its calculated cyber-attack against PCM, in an effort to create multiple claims per plaintiff and to further exacerbate the damage to PCM's computer systems and business.  In some instances, showing upwards of five separate email requests for a single individual.

29.    To be sure, as Ordered by this Court, Atlas first provided a List of some 47,632 alleged non-disclosure requests emails.

30.    Then in response to a second Order of this Court, Atlas sent another List purporting to provide PCM with "A 'Covered Persons list', which includes, for both individuals plaintiffs and the 'Covered Persons' (as defined in the Complaint), the dates the [alleged 47,624] takedown notices were [supposedly] delivered to defendants and the 'category' of covered person into which each person fits."

31.    As demonstrated by the Lists, it appears that some 47,624 – 47,632 separate emails were sent – allegedly on behalf of about 19,000 plaintiffs. Many of these alleged requests are duplicates, list different addresses and different phone numbers for the same person, and otherwise appear to have multiple requests for

the same person.

32.     The Lists allege that Atlas sent these approximately 48,000 emails to PCM in a calculated, nearly simultaneous, and massive fashion on the 2023-2024 New Years Holiday, i.e. about 7,000 emails per day continuously from December 30, 2023 - January 5, 2024.

33.     PCM was closed for the holidays when this massive email attack was launched against it.

34.     Atlas created and designed this computer-based attack upon PCM, flooding PCM's system and servers with tens of thousands of emails specifically during the winter holiday season, in an attempt to manufacture claims for Assignors and profit for Atlas.

35.     The Complaint[2] alleges that "each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas)" sent nondisclosure request via email to PCM from "AtlasMail" starting on or about December 30, 2023. Complaint at ¶ 51.

36.     PCM denies that the individual plaintiffs and all of the Assignors sent nondisclosure requests.

---

[2] February 7, 2024, the Plaintiffs filed the underlying complaint against PCM in the New Jersey State Court, Law Division, Monmouth County (State Dkt. MON-L-00486-24) (the "Complaint"). On March 29, 2024, PCM filed a Notice of Removal of Plaintiffs' Complaint before this Court (Dkt. No. 1), which removal was unopposed and thereafter granted by this Court.

37.    PCM denies that the requests were valid, denies that the assignments were valid, and denies that the Assignors all qualify as Covered Persons under Daniel's Law.

38.    Atlas purposefully and intentionally caused damage to PCM's email system, website, computers and/or computer systems, and business.

39.    As a result of Atlas' cyber-attack, the traffic on an email that typically receives around 40 emails per day increased by 47,000% overnight.

40.    When PCM reopened after it had been closed for the holiday, PCM's primary sales email address and main source for new leads info@postcardmania.com was overwhelmed with what appeared to be thousands of spam emails. These emails completed bogged down the email account – PCM's main source for new leads and business generation – making it impossible to locate and respond to actual, legitimate customer and new customer emails that were necessary for business.

41.    Atlas' attack was flagged as a spam attack and the email address extension was blocked as PCM feared a spam attack that would destroy their system, carry a virus that would infect their system, or would otherwise halt PCM's ability to conduct business.

42.    It was not until Atlas filed suit against PCM that PCM even realized the barrage of requests were purportedly not spam.

27

43.     Following the attack and receipt of the Complaint, PCM reached out to Atlas five times (twice by phone and three times by email) requesting a complete list of the requested opt outs to ensure compliance as the attack had been segregated as spam.  Atlas did not respond.

44.     As a result, PCM was forced to disable its prior cyberattack protections, spend additional and substantial time, resources, and financial investment fixing its systems and creating new systems and process to divert these voluminous emails to another email address so that same would not further interfere with PCM's business, customers, computers, data, workforce, programmer, and sales. PCM's responses to the Atlas cyberattack emails were extremely time consuming, significantly impacted PCM's regular business, interfered with business operations, and otherwise harmed and damaged PCM.

45.     PCM's primary business is designing and mailing postcards, PCM uses best practices to comply with all opt-out requests, protect privacy, and comply with all applicable laws. PCM again tried to contact Atlas directly to find out whom the Assignors were and the substance of their requests –such requests went unanswered.

46.     Once PCM retained counsel, counsel reached out to Atlas beginning March 14, 2024 seeking a complete list of the requested opt outs for compliance.

47.     On March 20, 2024, Atlas advised it would only provide such requested list upon the execution of a Discovery Confidentiality Order ("DCO"), to which

PCM was agreeable; however, Atlas' proposed DCO would have prohibited counsel from providing the information to PCM - thereby frustrating efforts to ensure compliance.

48.     On March 21 and 26, 2024, counsel for PCM sent a revised proposed DCO that would have permitted PCM to review the list for compliance purposes. Atlas never responded.

49.     It was not until Atlas was ordered by the Court, at the request of PMC through counsel, to produce an opt-out list, that Atlas finally provided same on May 6, 2024.

50.     Atlas' actions in refusing to provide PCM directly, or through counsel, with a list of opt out requests demonstrates that Atlas' aim was not to protect Covered Persons or ensure compliance whatsoever.  Instead, Atlas' scheme has always been to frustrate compliance and maximize potential legal exposure and thereby its own profits.

51.     PCM had to devote substantial time and resources, which are limited given the small size and nature of PCM's business, to identifying and addressing this suspected spam attack as well as its attempts to work with Atlas towards compliance post receipt of the Complaint.  As a result, PCM's employees were diverted resulting in their inability to provide services to legitimate clients and business inquiries.

52.     PCM's computer-based technology, and its computers/systems, are

used in interstate and foreign commerce and/or communications.

53.    To access or use postcardmania.com. mypostcardmania.com/login and related PCM websites and services, i.e. become a customer of PCM and gain access to PCM's services and computer platform, acceptance and express consent to PCM's Privacy Policy is required.[3] In addition, before receiving any data or information from PCM, customers must agree to PCM's "Terms of Service"[4] (herein "Terms"), which Terms, among other things, affirm and limit the access and use of all provided data to customers only and otherwise provide for indemnification for PCM for unauthorized access and/or use of PCM computer systems and data.

54.    The Complaint alleges that Atlas brings claims against PCM "as assignee of the claims of approximately 19,250 individuals." Complaint at ¶ 26.

55.    The Complaint alleges PCM violated Daniel's Law without advising how PCM purported violated same or providing any example of such alleged violation. *See id.* at ¶¶ 39, 53.

56.    Atlas is not a customer of PCM and as such, is not authorized to access PCM's computer systems, platform, or data.

57.    Neither the Individually named Plaintiffs nor the Assignors are customers of PCM and as such, are not authorized to access PCM's computer

---

[3] https://www.postcardmania.com/privacy-policy/
[4] https://www.postcardmania.com/sale-terms-conditions/

systems, platform, or data.

58.    Plaintiffs only way to access PCM data would be by hacking into the system and/or by fraudulent access through the creation of a fake account and/or by unauthorized access through some third party posing as a PCM customer.

59.    Atlas's unauthorized access to PCM's computer systems and data was accomplished by improper means and a plan with at least one other unknown actor to fraudulently, purposefully, and knowingly harm PCM.

60.    PCM did not consent to or otherwise have knowledge of Atals's unauthorized access.

61.    Atlas's unauthorized access to PCM's computer systems and data caused significant harm and damage to PCM's business and systems, including but not limited to interfering with and preventing PCM's ability to service customers, interfering with and preventing PCM's ability to respond to new customer leads, causing interruption of business and daily operations, loss of more than 80 hours of one programmer's time alone, additional losses of employee time, resources, revenue, and additional harm and losses.

62.    As a direct result of Plaintiffs' actions, PCM suffered harm including, but not limited to, its computer systems, its email system, its business, and other damages related to same.

## <u>COUNT I</u>
## Violations of Federal Computer Fraud and Abuse Act
## (CFAA) 18 *U.S.C.A.* § 1030

63.    PCM repeats and realleges Paragraphs 1-61 of its Counterclaims as if fully set forth herein.

64.    PCM's website, platform, and database are protected computer(s) used in or affecting interstate or foreign commerce or communication pursuant to 18 U.S.C. §1030(e)(2)(B).

65.    Atlas's conduct constituted intentional unauthorized access and/or exceeding of authorized access of a computer in violation of the CFAA because, among other things Plaintiffs' spam attacked PCM's website, server, and/or database with tens of thousands of emails nearly simultaneously.

66.    Atlas's conduct constituted intentional unauthorized access and/or exceeding of authorized access of a computer in violation of the CFAA because, among other things Plaintiffs are not customers of PCM and were not authorized to use, access, or obtain PCM's computers and data.

67.    Atlas's acted knowingly and with intent to defraud by purposefully accessing a protected computer without authorization and with intent to defraud, and by accessing a protected computer without authorization or in excess of falsely obtained authorization and using such access to obtain or alter information that Plaintiffs are not entitled to obtain or alter.

32

68.    Atlas's unauthorized and/or improper exceeding of falsely obtained authorized access to PCM's computer caused harm and interruption to PCM's business and otherwise caused damages by the impairment to the integrity or availability of data, a program, a system, or information, costs incurred by PCM in responding to the offense and/or restoring the system.

69.    As such, Atlas's actions caused damages and loss suffered by PCM which, in aggregate, far exceed $5,000 in value during a one-year period.

70.    As a result, PCM is entitled to and demands civil remedies for Atlas's violations of the CFFA, including, but not limited to, injunctive relief, compensatory damages, statutory damages, punitive damages, indemnification, attorney's fees and costs, pre- and post-judgment interest, and all other relief as the Court deems proper and just.

## COUNT II
### Violations of New Jersey Computer Related Offenses Act
### *N.J.S.A.* § 2A:38A-3 ("NJCROA")

71.    PCM repeats and realleges Paragraphs 1-69 of its Counterclaims as if fully set forth herein.

72.    Atlas purposely and/or knowingly accessed PCM's computer, computer system, or network without authorization or in excess of authorization as detailed above, *e.g.*, by way of the massive email spam attack and/or by way of unauthorized access through improper means.

73.    Atlas purposely and/or knowingly accessed, altered, damaged, took and/or destroyed PCM's data and/or systems without authorization.

74.    Atlas was damaged in business and/or property as a result of the unauthorized access and related misconduct of Plaintiffs.

75.    Atlas acted purposefully and/or knowingly in their unauthorized actions.

76.    As a result, PCM is entitled to and demands civil remedies for Atlas's violations of the NJCROA, including, but not limited to, injunctive relief, compensatory damages, statutory damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## <u>COUNT III</u>
**Tortious Interference**

77.    PCM repeats and realleges Paragraphs 1-75 of its Counterclaims as if fully set forth herein.

78.    PCM has a reasonable expectation of economic advantage and valid, protectable interest in protecting its economic relationship with its current customers and prospective customers.

79.    PCM has business and contractual relationships with its customers.

80.    Atlas knew of PCM's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers.

81.    Atlas purposely, intentionally, and maliciously interfered with PCM's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers, without justification, by way of the massive, coordinated spam attack of tens of thousands of emails to PCM and/or by way of unauthorized access through improper means.

82.    Atlas's actions in this regard inhibited PCM's ability to service their customers and potential customers, caused massive disruption to services, and among other things, caused PCM to cease providing services in and related to New Jersey.

83.    Atlas's actions further caused PCM to deny services to certain customers, both current and prospective, in an effort to mitigate and prevent further attacks by Atlas.

84.    As a result of Atlas's actions and interference, PCM has suffered and continues to suffer losses and damages, the full amount of which shall be proven at trial.

85.    As a result, PCM is entitled to and demands civil remedies for Atlas's Tortious Interference with current and perspective business advantage, including, but not limited to, injunctive relief, compensatory damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT IV
**Civil Fraud**

86.    PCM repeats and realleges Paragraphs 1-84 of its Counterclaims as if fully set forth herein.

87.    PCM only allows access to its platform and data to PCM customers.

88.    Atlas is not a PCM customer.

89.    Atlas could not have accessed PCM's platform and/or data unless or someone on Atlas's behalf misrepresented itself as or to a PCM customer.

90.    Such misrepresentation is a material fact as status as a customer, or someone authorized to access PCM's platform and/or data is required for such access.

91.    Atlas knew it was not PCM's customers, nor were they permitted access to PCM's data and/or platform.

92.    Atlas intended for PCM and/or PCM's customer(s) to rely on their misrepresentation and intended to induce action on such reliance.

93.    PCM and/or PCM's customer(s) reasonably relied upon Atlas misrepresentations.

94.    PCM was damaged and suffered loss as a result of PCM's and/or PCM's customers' reliance on Atlas/Plaintiffs' misrepresentation.

95.    Atlas misrepresented that PCM was a data broker that publishes Protected Information on the Web, misrepresented that the tens of thousands of

emails it sent to PCM were from "covered persons" or otherwise constituted valid requests under Daniel's Law.

96.    Atlas misrepresented that it sought to enforce compliance with Daniel's Law on behalf of Covered Persons and misrepresented that it would provide information and services necessary for same.

97.    Atlas knew its representations were false and/or otherwise unverified – for example, by including PCM on its selection list of targeted "data brokers" for Plaintiffs and Assignors to select from, by misrepresenting to Plaintiffs/Assignors that PCM possessed their respective Protected Information, creating and sending multiple emails per Assignor on or about New Years Day (see about 48,000 emails allegedly sent on behalf of about 19,000 Assignors) in an effort to manufacture additional invalid claims in its spam attack and by failing to confirm the Covered Person status of the Assignors, failing to confirm the tens of thousands of requests contained Protected Information, and failing to confirm the accuracy of the targeted PCM email address as admitted in its own terms and conditions.

98.    Atlas intended for PCM, and upon information and belief the Assignors, to rely on its misrepresentations.

99.    PCM was forced to and had reasonably rely on the misrepresentations by Altas.

100.   PCM was, and continues to be, damaged and suffered loss as a result of

PCM's reliance on Atlas's misrepresentation.

101.   As a result, PCM is entitled to and demands judgement against Atlas for Civil Fraud, including, but not limited to, injunctive relief, compensatory damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT V
## Civil Conspiracy

102.   PCM repeats and realleges Paragraphs 1-99 of its Counterclaims as if fully set forth herein.

103.   Atlas and/or one or more of the Plaintiffs and/or Assignors jointly, separately, or through someone acting on their behalf, conspired and agreed unlawfully access PCM's computers, platform, and/or data and to take, harm, or otherwise use such unlawfully obtained information.

104.   Atlas and/or one or more of the Plaintiffs and/or Assignors jointly, jointly, individually, and/or through someone acting on their behalf, took overt steps to effectuate such plan and did in fact unlawfully gain access PCM's computers, platform, and/or data.

105.   Atlas and/or one or more of the Plaintiffs and/or Assignors jointly, individually, and/or through someone acting on their behalf, took additional overt steps and gain access to and took data from PCM's computers, platform, and/or data.

106.   The actions of Atlas and/or one or more of the Plaintiffs and/or

Assignors jointly, individually, and/or through someone acting on their behalf, damaged and was the proximate cause of damage to PCM.

107.   As a result, PCM is entitled to and demands judgement against Atlas and its co-conspirator(s), including, but not limited to, injunctive relief, compensatory damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## Prayer for Relief

WHEREFORE, PCM prays for relief to the extent and as permitted by law, as follows:

A.   For judgment against Atlas and Plaintiffs, and in favor of PCM, on each of PCM's Counterclaims I – V;

B.   Statutory damages;

C.   Injunctive relief;

D.   Compensatory damages;

E.   Actual damages;

F.   Punitive Damages;

G.   Indemnification;

H.   Attorney's fees and costs;

I.   Pre- and Post-Judgement interest; and

J.    Such other relief as the Court deems proper and just.

## DEMAND FOR JURY TRIAL

PCM hereby demands a trial by jury on all issues as provided by *Fed. R. Civ. P.* 38(b) and *L. Civ. R.* 38.1.

DATED: October 2, 2025                    Respectfully submitted,

**GREENSPOON MARDER LLP**
*Attorneys for Defendant*
*Joy Rockwell Enterprises, Inc.*
*d/b/a PostcardMania PCM LLC*

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2025, I filed a true and correct copy of the foregoing with the court and a copy will be served upon all parties of record via CM/ECF.

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro, Esq.