IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ACCUZIP, INC., et al. | : | NO. 24-4383 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOY ROCKWELL ENTERPRISES, INC., et al. | : | NO. 24-4389 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE ALESCO GROUP, L.L.C., et al. | : | NO. 24-5656 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SEARCHBUG, INC., et al. | : | NO. 24-5658 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| US DATA CORP., et al. | : | NO. 24-7324 |

ATLAS DATA PRIVACY             :        CIVIL ACTION
CORPORATION, et al.            :
                              :
        v.                    :
                              :
DARKOWL, LLC, et al.          :        NO. 24-10600

MEMORANDUM

Bartle, J.                                        June 26, 2026

Plaintiff Atlas Data Privacy Corporation ("Atlas") and several named individual plaintiffs allege that the defendants in the above-captioned cases have violated New Jersey's Daniel's Law.  N.J. Stat. Ann. § 56:8-166.1.  The defendants have filed counterclaims alleging violations by plaintiffs of the New Jersey Computer Related Offenses Act ("CROA") (N.J. Stat. Ann. § 2A:38A-3) and tortious interference under New Jersey law.  Some of these defendants have also brought counterclaims for violations of the Federal Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030), for fraud, and for civil conspiracy.

Before the court is the omnibus motion of plaintiffs to dismiss the counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

I

Courts evaluate a motion to dismiss counterclaims under the same standard for deciding a motion to dismiss a complaint.  See Perelman v. Perelman, 545 F. App'x 142, 146 (3d

2

Cir. 2013); Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 896-98 (E.D. Pa. 2011).  When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the light most favorable to the non-moving party.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); see also Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  When there is a document "integral to or explicitly relied upon in the complaint," it may also be considered as there is no concern of lack of notice to the non-moving party.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation modified)).  The court may also take judicial notice of matters of public record.  See id.

The pleading must set forth more than "labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It must set forth more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555, 557) (citation modified).  Instead, it must recite sufficient factual content to state a claim that is plausible on its face.  Id.

3

II

Daniel's Law was enacted by the New Jersey Legislature after a disgruntled lawyer obtained the home address of United States District Judge Esther Salas from the internet and attempted to assassinate her.  The assailant tragically killed her son, Daniel Anderl, and wounded her husband.

Daniel's Law allows judges, prosecutors, and other law enforcement officers as well as their immediate family members ("covered persons") to request that any person, business, or association not disclose or make available their home addresses and unpublished telephone numbers.

The statute requires covered persons to make their requests in writing.  Upon receipt of the request, a person, business, or association must comply within ten business days. If they fail to do so, covered persons may recover actual and punitive damages.

Daniel's Law allows covered persons to assign their claims.  Here, approximately 19,000 covered persons have made assignments to Atlas.  According to the counterclaims, Atlas owns and operates an online platform that covered persons may use to send written nondisclosure notices, which are auto-generated by Atlas.

4

III

In these six cases, some 19,000 covered persons, as noted, made assignments to Atlas whose website they used to notify defendants to cease disclosure of their personal contact information.  Each takedown notice contained the name, home address, and/or unlisted telephone number of the individual sender.

All defendants allege that Atlas sent tens of thousands of emails "nearly simultaneously" to defendants' email accounts.  In their opposition briefs, defendants deemed what occurred as a "spam attack" or digital "bombardment" over the course of several days in or around the 2024 winter holiday season.  They claim that they received multiple requests from the same covered person, resulting in around 48,000 total nondisclosure requests.

Some defendants allege that they had a preexisting site or email that the covered persons could have used to "opt-out" or have their information removed from the defendants' websites.  Defendants assert that the covered persons did not use these preexisting opt-out processes and instead sent nondisclosure requests to defendants' other email addresses.

Finally, some defendants allege in their counterclaims that Atlas could only have determined whether a covered person's

5

information was being distributed by them if Atlas "hack[ed] into the system, fraudulent[ly] access[ed] through the creation of a fake account, and/or [gained] unauthorized access through some third party posing as [defendant's] customer."

IV

Plaintiffs argue that defendants have failed to state a claim for a violation of the CROA. The CROA allows a "person or enterprise damaged in business or property" to sue another person who alters, damages, accesses, or obtains data from a computer without authorization. In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 277 (3d Cir. 2016). Defendants do not cite in their counterclaims the specific subsections of the CROA allegedly violated by the plaintiffs. It is not until their opposition briefs that they specify that plaintiffs violated N.J. Stat. Ann. § 2A:38A-3(a)-(c), (e).

First, defendants assert that plaintiffs violated the CROA when they purposefully accessed defendants' data and database to determine whether defendants were disclosing the home addresses and unlisted telephone numbers of covered persons. The only subsections of the CROA that relate to data and databases are N.J. Stat. Ann. § 2A:38A-3(a) and (e), but neither allows recovery for merely accessing data. For there to be a violation of subsection (e), there must be the "purposeful

6

or knowing accessing and reckless altering, damaging, destroying or obtaining of any data [or] data base … ."  For there to be a violation of subsection (a), there must be the "purposeful or knowing, and unauthorized altering, damaging, taking or destruction of" data and databases.

The defendants merely claim that their data and databases were accessed, not that they were recklessly or knowingly altered, damaged, taken, obtained, or destroyed as required by N.J. Stat. Ann. § 2A:38A-3(a) and (e).  See In re Nickelodeon Consumer Priv. Litig., 827 F.3d at 277.  Claims based on plaintiffs' accessing of defendants' data and databases without more fail.

Next, defendants assert that plaintiffs violated subsections (a), (b), and (e) when Atlas sent a large volume of nondisclosure requests "nearly simultaneously" and "bombard[ed]" their inboxes.  These subsections have different scienter requirements but make it unlawful to alter, damage, take, destroy, or obtain computers, computer systems, or computer networks.  Viewing the counterclaims in the light most favorable to defendants, they do not plausibly plead a violation of these subsections.

AccuZIP, for example, only alleges harm to its internal business operations and the risk of harm to its

7

computers and computer systems.  According to AccuZIP, its systems were "bombarded" with emails, which "overwhelm[ed] AccuZIP's support systems," "render[ed] individual, case-by-case handling impossible," "[depleted] substantial time and already limited resources," and "prevented timely access to legitimate customer inquiries[.]"

AccuZIP pleads that "the surge of messages <u>risked</u> crashing AccuZIP's mail servers and exhausting storage capacity, raising the <u>possibility</u> of lost or delayed client communications, and other forced emergency response measures necessitated by Atlas' actions [emphasis added]." Significantly, AccuZIP does not allege anywhere in the counterclaim that its mail servers actually crashed, its storage capacity was actually exhausted, or that client communications were actually lost.  In effect, AccuZIP avers that it is "damaged in business or property," but it does not aver that its computers, computer networks, or computer systems were altered, damaged, destroyed, or taken.  <u>See</u> N.J. Stat. Ann. § 2A:38A-3(a), (b), (e).

Additionally, AccuZIP alleges that plaintiffs violated N.J. Stat. Ann. § 2A:38A-3(c) when they emailed the nondisclosure requests to AccuZIP.  This subsection prohibits the "purposeful or knowing, and unauthorized accessing or

8

attempt to access any computer, computer system or computer network."  AccuZIP states that plaintiffs "purposely and/or knowingly accessed AccuZIP's computer, computer system, or network without authorization or in excess of authorization." This is simply a conclusory legal statement and must be disregarded.  The mere existence of a separate process for covered persons to have their information deleted does not mean that plaintiffs were prohibited from sending nondisclosure requests to the defendants as they did.  AccuZIP identifies no other facts to support the conclusion that plaintiffs were not authorized or exceeded their authorization to send emails to "support@AccuZIP.com," a public email address.  AccuZIP also fails to allege that plaintiffs knew that AccuZIP had a different "opt-out" request process or that they were not authorized to send emails.

The allegations of the other defendants to support their CROA claims are similar, and they do not plead any additional facts that make their CROA claims plausible.  The counterclaims of all defendants to the extent they allege a violation of the CROA will be dismissed for failure to state a claim upon which relief can be granted.

9

V

Additionally, four defendants, AccuZIP, Joy Rockwell, Alesco, and US Data, bring claims for violations of the federal CFAA.  18 U.S.C. § 1030.  In response to plaintiffs' motion to dismiss, these defendants argue they have pleaded valid claims pursuant to 18 U.S.C. § 1030(a)(2)(C), (a)(4), and (a)(5)(A).  The statute provides that it is unlawful when a person: (1) "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains … information from any protected computer," (18 U.S.C. § 1030(a)(2)(C)); (2) "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value," (18 U.S.C. § 1030(a)(4)); or (3) "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer," (18 U.S.C. § 1030(a)(5)(A)).

Defendants assert that claims brought under the CROA and the CFAA must be considered separately.  They point out that the CFAA defines "damage" and "loss" to include "system-availability impairment and incident-responses costs and provides a private civil remedy with a $5,000 loss threshold[.]"

10

Even so, defendants do not allege how plaintiffs' actions constitute access to a protected computer with intent to defraud, or how plaintiffs' actions resulted in a furtherance of the intended fraud and obtaining of anything of value.  P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC., 428 F.3d 504, 508 (3d Cir. 2005).  Thus any claims pursuant to 18 U.S.C. § 1030(a)(4) are deficient as conclusory.

Defendants further argue that plaintiffs violated 18 U.S.C. § 1030(a)(2)(C) by intentionally accessing defendants' databases and obtaining information from them without authorization.  Defendants allege that plaintiffs did so when Atlas sent a "spam attack" of tens of thousands of emails to defendants' websites, servers and/or databases.  Setting aside defendants' characterization of the non-disclosure email requests permitted under Daniel's Law as "spam," defendants fail to allege that Atlas obtained any information from defendants' computers as a result of sending a large volume of emails. Their allegations are insufficient to sustain a cause of action under 18 U.S.C. § 1030(a)(2)(C).

Defendants also allege that this same conduct violated 18 U.S.C. § 1030 (a)(5)(A) by "knowingly causing the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causing damage without

11

authorization, to a protected computer." Defendants cite multiple cases in different jurisdictions which found that a transmission of a large volume of emails that diminished the receiver's ability to use its systems and data constituted a violation of 18 U.S.C. § 1030(a)(5)(A). Only one of these cited cases, Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am., 648 F.3d 295, 302-03 (6th Cir. 2011), involved a motion to dismiss.

In Pulte, the court reversed the dismissal of a claim under this CFAA provision because the plaintiff, a home building company, asserted that the defendants, a national labor union and its officers, "intentionally caused damage" by using an allegedly illegal strategy. The company specifically pleaded that the union not only instructed union members to send thousands of e-mails to three specific company executives and call the office but used an auto-dialing service to generate a high volume of calls. Id. at 299, 303. These calls and e-mails primarily concerned the company's purported unfair labor practices, but some included threats and obscenities. Id. Furthermore, the union encouraged members to "fight back," which suggested that "a slow-down [of the computer system] was at least one of [the union's] objectives." Id. The Sixth Circuit also clarified that the union's justification that it was engaging in a lawful organizing campaign was not plausible

12

because sending thousands of emails to the particular executives or "fight[ing] back" did not affect the campaign.  Id. at 303.

In contrast, defendants here simply speculate that Atlas and the other plaintiffs wanted to slow defendants' computer systems down.  They allege no facts in support of this conclusory statement.  The defendants have not alleged that Atlas gave an instruction to target a specific employee or email or a directive indicating that disruption of the computer systems was intended.

Unlike the allegedly illegal strategy employed by the union in Pulte, Daniel's Law permits the sending of nondisclosure requests.  There are no plausible facts suggesting that Atlas intended to do anything other than facilitate the right of judges, prosecutors, and other law enforcement officers under Daniel's Law to send non-disclosure requests in order to protect themselves from harm from the likes of the person who sought to assassinate Judge Salas.  See N.J. Stat. Ann. § 56:8-166.1(a)(2).  The allegations in the counterclaims do not rise to the level of intentional and unauthorized conduct penalized under 18 U.S.C. § 1030 (a)(5)(A).

Defendants also appear to allege that plaintiffs accessed defendants' databases and learned that defendants were disclosing the personal information of covered persons in

13

violation of 18 U.S.C. § 1030(a)(2).  The statute prohibits persons from obtaining information by "intentionally access[ing] a computer without authorization or exceed[ing] authorized access."  18 U.S.C. § 1030(a)(2).  The only facts defendants plead to support this allegation is that Atlas and the individual plaintiffs cannot have accessed information on the websites without signing up for accounts for defendants' services and that plaintiffs did not do so.  Defendants' accusation is entirely conclusory and speculative.  Plaintiffs may have found this information in other ways or may have sent the non-disclosure requests as a prophylactic measure to protect judges, prosecutors, and law enforcement offers from unwanted disclosure of their information.  Defendants have failed to show "more than a sheer possibility" that Atlas has acted unlawfully. Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016).  As a result, these conclusory allegations must be disregarded.

Defendants also allege that plaintiffs violated 18 U.S.C. § 1030(b), which provides that "[w]hoever conspires to commit or attempts to commit an offense under subsection (a)" of the statute will be punished.  Because defendants have not plausibly pleaded a violation under subsection (a), they have failed to plead a violation under subsection (b).

14

The counterclaims of defendants AccuZIP, Joy Rockwell, Alesco, and US Data to the extent they allege violations of the CFAA will be dismissed for failure to state a claim upon which relief can be granted.

VI

All defendants counterclaim that plaintiffs tortiously interfered with their businesses.  Under New Jersey law, to state a claim for tortious interference with either a business relation or contract, a party must plead "(1) a protected interest; (2) malice—that is, [the adverse party's] intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages."  Vosough v. Kierce, 97 A.3d 1150, 1159 (N.J. Super. Ct. App. Div. 2014); see also Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 37 (N.J. 1989).  Plaintiffs argue that defendants have failed to plead a protected interest, malice, or a reasonable likelihood that the interference caused the loss.

A protected interest does not need to be found in an enforceable contract, but there "must be allegations of fact giving rise to some reasonable expectation of economic advantage."  Printing Mart-Morristown, 563 A.2d at 37 (citation modified).  While defendants are not required to identify

15

multiple contracts or relationships from which they expected to benefit, "it must identify one." Austar Int'l Ltd. V. AustarPharma LLC, 425 F. Supp. 3d 336, 358 (D.N.J. 2019); see also Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc., 332 F. App'x 787, 790 (3d Cir. 2009).

In their counterclaims, defendants state that they had a "protectable interest in protecting [their] economic relationship[s] with [their] current customers and prospective customers" but provide few additional details. AccuZIP alleges that it was "pulled away from serving legitimate clients and business inquiries in order to remediate Atlas's failures." Joy Rockwell, Alesco, Searchbug, US Data, and DarkOwl state that Atlas "inhibited [its] ability to service their customers and potential customers," and "caused massive disruption to services." Joy Rockwell and US Data go a step further and aver that Atlas "caused [them] to cease providing services in and related to New Jersey." But none of these defendants identified any specific clients, prospective customers, or business inquiries to which they could not respond as a result of responding to Atlas' nondisclosure requests. While the cases cited by defendants show that a protected economic relation can be defined broadly, each of these cases specified a contract or people or entities with whom or with which the injured party had a relationship. Defendants here have not done so.

16

Defendants' claims for tortious interference fail. They will be dismissed.

VII

Defendants Joy Rockwell, US Data, and Darkowl also plead that Atlas and the remaining plaintiffs defrauded the defendants.  Defendants proffer four different theories of fraud.  First, they allege that Atlas fraudulently claimed that the nondisclosure requests were sent by a covered person when they were auto-generated by Atlas and that the requests constituted valid requests under Daniel's Law.  Next, defendants theorize that Atlas or someone acting on its behalf misrepresented itself as a customer to access defendants' systems.  Defendants further assert that Atlas indirectly defrauded defendants when it falsely told covered persons that the defendants were data brokers, causing the covered persons to authorize the sending of nondisclosure requests.  Finally, defendant US Data maintains that someone named Matt responding from the email legal@atlasmail.com fraudulently pretended to cooperate with US Data when he was actually stalling to cause defendants to fail to delete the home addresses and unlisted telephone numbers of covered persons within ten business days as required by Daniel's Law.

17

Under New Jersey law, the elements of fraud are: "(1) knowingly making a material misrepresentation; (2) an intention that the other person rely on the misrepresentation; (3) reasonable reliance by the other person; and (4) resulting damages." United States ex rel. Doe v. Heart Sol., PC, 923 F.3d 308, 318 (3d Cir. 2019). Rule 9 of the Federal Rules of Civil Procedure requires the pleader to "state with particularity the circumstances constituting fraud." A party pleading fraud must include "the who, what, when, where and how of the events at issue." United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 307 (3d Cir. 2016). The requirements of Rule 9(b) are "stringent" and serve to give defendants "notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." In re Burlington, 114 F.3d at 1418. Despite this heightened standard, courts must be "sensitive to the fact that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud." Id. (citation modified).

Malice, intent, and knowledge need only be averred generally. Id. Such averments, however, "may not rest on a bare inference that a defendant must have had knowledge of the facts or must have known of the fraud given his or her position in the

18

company." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256 (3d Cir. 2006); see also Johnson v. Draeger Safety Diagnostics, Inc., No. CIV.A. 13-2439 JLL, 2013 WL 3788937, at *6 (D.N.J. July 19, 2013).

Defendants do not allege any facts to support their conclusion that Atlas falsely represented that the emails were legitimate nondisclosure requests and that they were sent by covered persons. Defendants also provide no basis to support that the representation was materially false or even so that Atlas knew its representations were false. Defendants merely conclude that Atlas "fail[ed] to confirm the Covered Person status of the Assignors" and failed to "confirm [the requests] contained Protected Information."

Furthermore, defendants do not plead that they reasonably relied on the purported misrepresentations that the nondisclosure requests were submitted by covered persons. Defendant Darkowl does not state what actions it took or failed to take to its detriment upon receiving the nondisclosure requests. Defendant Joy Rockwell merely avers that it thought the emails were spam and that "[i]t was not until Atlas filed suit against [Joy Rockwell] that [it] even realized the barrage of requests were purportedly not spam." In its counterclaims, US Data "denies that the requests were valid, denies that the

19

assignments were valid, and denies that the Assignors all qualify as Covered Persons under Daniel's Law" and alleges that it immediately believed the nondisclosure requests to be "spam" and only processed the requests "in an abundance of caution[.]" None of these allegations plausibly constitutes reasonable reliance on a material misrepresentation.

Defendants also fail to set forth facts needed to plausibly plead their second theory of fraud.  Defendants conclude that Atlas or someone else must have misrepresented itself as defendants' customers to login to defendants' platform and gain access to their data.  They fail to specify who or when someone made this misrepresentation.  Defendants state generally that they reasonably relied on this alleged misrepresentation, but they do not state how they relied to their detriment or provide any facts to plausibly plead detrimental reliance. These statements do not satisfy the who, what, when, and where. Majestic Blue Fisheries, LLC, 812 F.3d at 307.

Defendants also argue that they indirectly relied on Atlas' misrepresentation to its assignors that defendants were "data brokers."  Under New Jersey law, "the theory of indirect reliance allows a plaintiff to maintain a fraud action based upon a statement the plaintiff heard 'not from the party that defrauded him or her but from that party's agent or from someone

20

to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or her detriment.'" Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006) (citing Kaufman v. i-Stat Corp., 754 A.2d 1188, 1195 (N.J. 2000). Here, defendants do not allege that plaintiffs intended for the defendants to hear that they were "data brokers." Even if they did, defendants do not allege how they detrimentally relied on the representation that they were data brokers. Additionally, while defendants detail they are not data brokers, they do not point out how that misrepresentation is material.

Defendant US Data also argues that Atlas misled and defrauded US Data by "feign[ing] cooperation and stall[ing] in an effort to frustrate compliance and manufacture bogus claims against US Data." US Data states in its counterclaim and opposition brief that Atlas sent thousands of nondisclosure requests between January 6 and January 13, 2024. Therefore, US Data's time to comply with Daniel's Law by taking down the home addresses and unlisted telephone numbers of covered persons ran on January 26, 2024. It avers that "in an abundance of caution US Data began immediately processing the requests received."[1]

---

1    US Data does not define "processing," but the court understands it to mean that US Data removed the home addresses

21

According to U.S. Data, before such time expired on January 19, 2024, it emailed Atlas to request a file of all nondisclosure requests and asked Atlas to work together to establish an easier way to send, receive, and manage the nondisclosure requests.  Atlas did not respond until January 26, 2024, when "'Matt' from Atlas" advised that Atlas "would provide US Data with a login and temporary password to Atlas' 'dashboard.'"  US Data avers that it received the login information that same day.  The next day, Matt emailed US Data that the "dashboard" could be used to access a consolidated .csv file of the nondisclosure requests.  US Data's counterclaim does not specify any other statements or representations made by Matt or Atlas.  US Data did not receive any other correspondence until February 26, 2024, at which point Matt informed US Data that Atlas had initiated litigation.

Defendants have not pleaded any representations of cooperation by Atlas upon which US Data could have relied.  US Data's time to comply with Daniel's law ran before Atlas made any representations regarding the "dashboard."  And in any event, US Data could not have relied on any of Atlas' representations to its detriment, since US Data began processing

---

and unlisted telephone numbers of covered persons as required by Daniel's Law.

the nondisclosure requests by at least January 19, 2024 and finished processing them on February 29, 2024.

None of the defendants has pleaded fraud either plausibly or with the required particularity.  All these claims will be dismissed.

VIII

Finally, defendants Joy Rockwell, Alesco, Searchbug, US Data, and Darkowl allege that the plaintiffs engaged in a civil conspiracy to access, take, and harm defendants' systems and data.  A party bringing a civil conspiracy claim under New Jersey law must plead: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages."  Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003).  Civil conspiracy claims under New Jersey law require defendants to plead a viable underlying tort claim.  Dill v. Yellin, 725 F. Supp. 3d 471, 484 (D.N.J. 2024).

Defendants have failed to identify a single viable underlying tort to support their conspiracy claims.  They have not stated a civil conspiracy claim upon which relief can be granted.  Id.

23

IX

Defendants also bring counterclaims not only against Atlas but also against the individually named plaintiffs. Defendants' counterclaims allege virtually no facts about these individual plaintiffs' actions and participation in the purported violations of the CROA and CFAA, in any tortious interference, in any fraud, or in any conspiracy.  Furthermore, defendants fail to address how any of their claims against these individual plaintiffs survive plaintiffs' motion to dismiss in their opposition briefs.  Accordingly, all of defendants' counterclaims against the individual plaintiffs as well as against Atlas will be dismissed for failure to state a claim.

BY THE COURT:


/s/   Harvey Bartle III
                                        J.

24